(694 P.2d 1305)
No. 55,808

STATE OF KANSAS, *Plaintiff-Appellee*, v. EDDIE A. JASO, *Defendant-Appellant*.[1]

Opinion filed January 10, 1985.

*Kiehl Rathbun*, of Wichita, for the appellant.

*Michael Jennings*, assistant district attorney, *Geary N. Gorup*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, P.J., REES and MEYER, JJ.

MEYER, J.: Appellant Eddie Jaso (defendant) appeals following a jury verdict finding him guilty on two counts of selling controlled substances in violation of K.S.A. 65-4127b(b)(1) and K.S.A. 65-4107e. Defendant was sentenced to 9-30 years on each count.

The facts were fully set out in *State v. Jaso*, 231 Kan. 614, 648 P.2d 1 (1982) (hereinafter referred to as *Jaso I*), and will not be repeated herein.

Defendant first contends that the oral application providing the basis for the issuance of the search warrant for apartment # 3003 did not contain sufficient facts to support a finding of probable cause. He contends there was insufficient analysis of the substances purchased on May 22, 1980, to support a determination the substances were Quaaludes containing methaqualone, and further argues there was no indication in the application for the warrant that access to the drugs was limited to apartment # 3003.

The State contends first that the issue of sufficient probable cause supporting the search warrant was adjudicated in *Jaso I*, and that the Supreme Court's finding of sufficient probable cause therein negates defendant's right to challenge the warrant now. In *Jaso I*, the issue was whether probable cause existed to support a search of the contents of the brown Chevrolet which

Eddie Jaso used to flee the Riverbend Apartments (which included apartment # 3003 above referred to). The Supreme Court made no *specific* determination regarding probable cause to search apartment # 3003. However, the court did find that the validity of the automobile search depended on facts obtained in the search of the apartment. Thus, under the "fruit of the poisonous tree doctrine," if the search of the apartment was illegal, so would be the search of the car. And inasmuch as the Supreme Court held the search of the car was legal and was based on facts gleaned by the search of the apartment, it could be argued that a conclusion had been reached by that court that the apartment search was legal. While the State does not argue the "poisonous tree" doctrine, such is the only theory which would be applicable if we were to conclude the court in *Jaso I* had determined the validity of the apartment search. Since such a holding would be by way of implication, and perhaps too nebulous for application in a criminal case, we will consider this issue on the merits.

The complaint in the instant case was supported by the sworn testimony of Douglas Roth, assistant district attorney. Roth's testimony was based on statements made by a detective who actually purchased Quaaludes from Espinoza and who followed Espinoza's and the defendant's activities during the course of the investigation. Although it would appear much of Roth's testimony was hearsay, it is noted that hearsay may be relied upon and form the basis for a probable cause finding. *Wilbanks v. State,* 224 Kan. 66, 72, 579 P.2d 132 (1978). The federal rules also so provide: "The finding of probable cause may be based upon hearsay evidence in whole or in part." Rule 4(b) Fed. R. Crim. Proc.

The sworn testimony given before the magistrate from whom the search warrant was obtained contained the following information:

—Detective Brewer purchased 100 Quaaludes from Joseph Espinoza on May 22, 1980.

—At this first purchase, Detective Brewer was told by Espinoza he (Espinoza) would go to his "source" and get the Quaaludes and Espinoza was seen entering an apartment at the Riverbend Apartments.

—Detective Brewer was familiar with Quaaludes and knew

the drugs he purchased on May 22, 1980, were drugs containing methaqualone.

—On May 23, 1980, Detective Brewer spoke with Espinoza who told the detective he could get 10,000 Quaaludes from his source.

—Espinoza told Detective Brewer to meet him on May 23, 1980, at a parking lot near the Riverbend Apartments to pick up 10,000 Quaaludes.

—Detectives observed Espinoza enter and leave apartment # 3003 of the Riverbend Apartments.

—Espinoza approached Detective Brewer, at the nearby parking lot, told him the Quaaludes were being counted, and then returned to Riverbend Apartments and entered apartment # 3003.

—Espinoza returned to the parking lot with 5,000 Quaaludes, gave them to Detective Brewer, and stated 3,000 more were being counted out in apartment # 3003.

Based upon this showing we conclude the magistrate had before him sufficient evidence to support a finding that there was probable cause to issue the search warrant.

In pressing his argument that there was insufficient probable cause to issue the search warrant, defendant relies on *State v. Whitehead*, 229 Kan. 133, 622 P.2d 665 (1981), and *State v. Morgan*, 222 Kan. 149, 153, 563 P.2d 1056 (1977). Neither of these cases supports defendant's contentions. In *Whitehead*, the court affirmed the finding of probable cause, relying on statements to the effect that the *only* place where the drugs could have come from was the place searched. In the instant case, while there was no specific statement that apartment # 3003 was the only place where the Quaaludes could have come from, there was testimony that the only place Espinoza did indeed enter and exit was apartment # 3003. Thus, the *meaning* of what was said in *Whitehead*, and in the instant case, is the same. In *Morgan* it was held that the evidence of a single drug sale *may* not give probable cause to believe drugs are present at a particular location. *Morgan* is distinguishable from the instant case in that, here, there was more than a single sale. And *Morgan* held that while a single sale may be insufficient to show probable cause, evidence indicating protracted or continuous conduct at a par-

ticular location may support a finding of probable cause. *Morgan*, 222 Kan. at 153. Furthermore, the court in *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978), held that a single isolated drug sale *might be sufficient* to support a finding of probable cause if the sale had occurred recently. *Jacques*, 225 Kan. at 42. Thus, *Morgan* does not prohibit a finding of probable cause merely because only one drug sale occurred.

Appellee cites *Massachusetts v. Sheppard*, 468 U.S.____, 82 L.Ed.2d 737, 743, 104 S.Ct. 3424 (1984), and *United States v. Leon*, 468 U.S.____, 82 L.Ed.2d 677, 104 S.Ct. 3405 (1984), where the court held that the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid. Such cases are, however, not necessary to our disposition of the issue before us.

The defendant next contends the search of apartment #3003 exceeded the authority of the warrant. Defendant specifically complains that officers seized not only drugs but evidence of identification as well. There is no merit to this contention. The search warrant did not list identification items, but did list 3,000 Quaalude pills. Since there was no way of knowing whether the pills would all be in one place, it is obvious that items as small as a single pill could legitimately be searched for. This being the situation, there was virtually no place too small for the officers to search. And so long as the officers were legitimately searching in a given area, items coming into their plain view were subject to seizure. Three tests were set out in *State v. Jones*, 233 Kan. 112, 114, 660 P.2d 948 (1983), to determine whether the plain view exception to the Fourth Amendment comes into play. The exception applies when it is shown that (1) the initial intrusion which afforded the authorities the plain view was lawful by virtue of a warrant (search or arrest), waiver or exigent circumstances; (2) the discovery of the evidence was inadvertent; and (3) the authorities immediately had reasonable or probable cause to believe the evidence observed in plain view was incriminating in nature.

Here, the intrusion was lawful because, as found above, the officers were executing a valid search warrant. The second test, that of inadvertence, is met because while the searching officers

were looking for "identification" it cannot be said they knew they would find the subject bill or card in the apartment. As the court in *United States v. Liberti,* 616 F.2d 34 (2nd Cir.), *cert. denied* 446 U.S. 952 (1980) held:

"On the other hand, we have considered and find most persuasive the Government's contention that the postal inspectors did not 'know' in advance that they would find the additional cosmetics in plain view and that, in the absence of this knowledge, their discovery was inadvertent. 'What *Coolidge* proscribes is an anticipated discovery, where the police know in advance the location of the evidence and intend to seize it.' *United States v. Bolts,* 558 F.2d 316, 320 (5th Cir.), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977); see *Mapp v. Warden,* 531 F.2d 1167, 1172 (2d Cir.), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976). For the Government to be charged with advance knowledge, it must at the very least have had probable cause to believe that the additional cosmetics would be found. *United States v. Hare,* 589 F.2d 1291, 1293-96 (6th Cir. 1979); *United States v. Marshall,* 452 F. Supp. 1282, 1287 (S.D. Fla. 1978); *United States v. Winston,* 373 F. Supp. 1005, 1007 (E.D. Mich. 1974), *aff'd,* 516 F.2d 902 (6th Cir. 1975). Mere expectation or suspicion that discovery would occur does not preclude application of the plain view doctrine. *United States v. Hare, supra,* 589 F.2d at 1294; *United States v. Worthington,* 544 F.2d 1275, 1280 n. 4 (5th Cir.), *cert. denied,* 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 72 (1977); *United States v. Cushnie,* supra, 488 F.2d at 82. 616 F.2d at 37."

The third test of *Jones,* the "incriminating character" of the seized evidence, is likewise met. The seizing authority need only have reasonable or probable cause to believe that the object is evidence of a crime. No more is required of an officer's judgment than that it be reasonable on the appearances to them, and the determination is made by considering the surrounding circumstances. *State v. Galloway,* 232 Kan. 87, 652 P.2d 673 (1982). Since the cleaning bill and postcard indicated defendant resided at the place where the drugs were found, they were clearly incriminating.

Defendant also contends the application of the search warrant contained false and misleading statements, and that under *State v. Jacques,* 225 Kan. 38, 587 P.2d 861 (1978), any evidence seized by the searching officers should have been suppressed. However, we note that *Jacques* also holds that there is a presumption of validity with respect to oral testimony or a written affidavit supporting a search warrant. Despite the presumption, however, the warrant may be challenged if false statements are made in the application knowingly or recklessly. *State v. Jacques,* 225 Kan. 38, Syl. ¶ 5. We have carefully examined defendant's con-

tentions in this regard, and find that much of what defendant complains are words or phrases which are subject to more than one interpretation. Such do not appear to us to have been made either with knowledge of falsity or with reckless disregard for truth. Further, given the presumption of validity, the complained of language does not appear to be false. To "chase down" all of the nuances possible under defendant's claimed falsities is not necessary, but we give the following examples to demonstrate why we feel defendant's contentions lack merit. Detective Brewer testified he actually stated Espinoza told him "his man" was supplying the drugs purchased, and that he did not actually use the words "his source" as stated in the application. Defendant contends that because of such difference the phrase "his source" is false. This is typical of defendant's claims of falsehood; yet, rather clearly we think, when the meaning intended is examined, the phrase is true. Another example is where defendant claims it was false to say the Quaaludes had been subjected to laboratory analysis when, in fact, they were not. A reading of the context, however, in which the statement appears discloses, to us, that what the witness meant was that he recognized Quaaludes when he saw them because he had on other occasions seen Quaaludes being subjected to laboratory analysis. These types of phrases do not even reach the falsehood plateau; certainly it cannot be said they are falsehoods knowingly and recklessly made.

Defendant's final contention is that his cross-examination of Joseph Espinoza was unduly restricted.

Limitations on cross-examination are within the discretion of the trial court, and will be overturned only upon a showing of abuse which is clearly prejudicial. *State v. Ogden,* 210 Kan. 510, Syl. ¶ 9, 502 P.2d 654 (1972). And one who claims abuse of discretion has the burden of proving that contention. *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.,* 234 Kan. 121, 131, 671 P.2d 511 (1983); *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 134, 422 P.2d 914 (1967). It is true that a defense counsel should be allowed leeway to establish a witness's subjective reason for testifying. *State v. Corn,* 223 Kan. 583, 588, 575 P.2d 1308 (1978). However, a prerequisite for witness testimony on a matter is that there is evidence the witness has the requisite personal knowledge. K.S.A. 60-419. Furthermore, conjecture or

speculation can never be the rule in giving testimony. *Staudinger v. Sooner Pipe & Supply Corporation*, 208 Kan. 100, 105, 490 P.2d 619 (1971). Repetitious questions may be excluded and such is not an abuse of the trial court's discretion. *State v. Belote*, 213 Kan. 291, 296, 516 P.2d 159 (1973). Furthermore, it is for the trial court to determine in its discretion when questioning becomes unduly argumentative.

Defendant presents us with a number of instances where objections by the prosecution were sustained, which he claims as error. However, when we apply the foregoing rules to these instances, we find they involve one or more of the following: (1) a matter which the witness cannot be said to be qualified to answer; (2) where only the form of the question was objected to and where, the defense having rephrased the question, same was answered; (3) those already asked and answered; and (4) argumentative questions. All of the rulings objected to by defendant, and cited to us, come within one or more of the above categories; clearly none of them have merit. The trial court made a correct ruling in each instance.

There is no merit to any of the issues raised by defendant.

Affirmed.