No. 64,716

STATE OF KANSAS, *Appellee*, v. JOHNNY WIGGINS, *Appellant*.

(808 P.2d 1383)

Opinion filed April 12, 1991.

*Michael L. McCoy*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Frank E. Kohl*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Johnny Wiggins directly appeals his jury conviction of second-degree murder, K.S.A. 21-3402. Wiggins and Chris Brownfield were tried jointly for the murder of Lee Degraftenreed, a fellow inmate at the Kansas State Penitentiary. Brownfield was convicted of aggravated battery, K.S.A. 21-3414. Wiggins, charged with first-degree murder, K.S.A. 21-3401, was convicted of second-degree murder and sentenced to a term of fifteen years

to life, to run consecutive to any sentence previously imposed. We affirm.

Wiggins and Brownfield were cellmates at the Kansas State Penitentiary. On September 7, 1988, both men went to work at the prison laundry. Upon returning from work, Brownfield discovered someone had entered their cell and stolen cigarettes, snacks, toilet articles, and three billfolds from a locked footlocker. Wiggins and Brownfield learned from other inmates that Lee Degraftenreed and several other inmates had been seen near the cell and that Degraftenreed had been observed carrying a stuffed pillowcase. Wiggins reported the theft to a unit team officer and several other officers but was informed his only remedy was to fill out a property claim form. Wiggins and Brownfield then asked another inmate, McCarther, to speak to Degraftenreed for them. Degraftenreed became angry with McCarther and stated he would not give anything back to Wiggins and Brownfield. Eventually, Degraftenreed came to Wiggins' and Brownfield's cell and threatened to kill them if he heard any more about the incident.

The same evening many rumors circulated throughout the prison concerning the theft. Wiggins and Brownfield were warned that something would happen to them in the morning.

The next morning, September 8, Wiggins and Brownfield reported to work at the laundry as usual. Wiggins testified that he saw Degraftenreed and a group of inmates observing the laundry and that he recovered a hidden knife to protect himself. When Degraftenreed entered the main gate of the laundry, Wiggins locked Degraftenreed inside. Wiggins testified that Degraftenreed laid down a laundry bag and came towards Wiggins. Wiggins told Degraftenreed there was no need for trouble but Degraftenreed claimed he would kill Wiggins. As Degraftenreed made his threat, Wiggins believed he was about to attack because Degraftenreed jumped back and reached under his shirt as if to retrieve a knife. Wiggins stated he stabbed Degraftenreed because he believed he was in a life and death situation. Degraftenreed ran to the back of the laundry and Wiggins, afraid that Degraftenreed would seize a weapon, chased him and continued to stab him until officers arrived at the scene. Brownfield came to Wiggins' aid and hit Degraftenreed on the head with a metal bar. Wiggins

testified he felt it was necessary to kill Degraftenreed before Degraftenreed killed him.

At trial several witnesses stated they had not seen a weapon in Degraftenreed's possession, nor was any weapon ever discovered. A homemade knife and metal bar were found in the laundry. An autopsy revealed that Degraftenreed suffered eighteen stab wounds, one of which pierced the heart, and had six lacerations on the head from a blunt instrument.

Wiggins' only defense at trial was that he acted in self-defense. He was convicted of second-degree murder. A motion for a new trial was denied and this appeal followed.

On appeal, Wiggins raises two issues. First, he contends the trial court erroneously instructed the jury on self-defense.

The jury was instructed on the defense of self-defense in accordance with PIK Crim. 2d 54.17 and K.S.A. 21-3211. The instruction provided:

"The defendants have claimed their conduct was justified as self-defense.

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force. Such justification requires both a belief on the part of the defendant and the existence of facts that would persuade a reasonable person to that belief.

"A person may stand his ground and use deadly force if this reasonably seems necessary to save himself."

Wiggins requested the following modification of the instruction: "Such justification requires both the belief on the part of a defendant and the existence of facts that would persuade a reasonable person, *in the position of the defendant,* to that belief." (Emphasis added.)

The trial court determined that *State v. Simon,* 231 Kan. 572, 646 P.2d 1119 (1982), required the use of an objective standard to determine reasonableness and denied the use of a modified instruction.

Wiggins contends the modified instruction was necessary in order for the jury to consider the unique circumstances and environment of a prison.

In *State v. Simon,* this court adopted a two-prong test for justification of use of deadly force in self-defense. Deadly force

is justified when the defendant subjectively believes such force is necessary and is subject to an objective standard of reasonableness. A reasonable belief is one which arises from the existence of facts which would persuade a reasonable person to that belief. See 231 Kan. at 575. Thus, we see justification of use of deadly force is measured by both a subjective and an objective standard.

In *State v. Stewart,* 243 Kan. 639, 763 P.2d 572 (1988), a battered wife was charged with the murder of her husband. The trial court instructed the jury on self-defense following the language of PIK Crim. 2d 54.17 and then added: " 'You must determine, from the viewpoint of the defendant's mental state, whether the defendant's belief in the need to defend herself was reasonable in light of her subjective impressions and the facts and circumstances known to her.' " 243 Kan. at 649.

We determined that, although expert evidence on the battered woman syndrome was relevant to a determination of the reasonableness of defendant's perception of danger, the reasonableness of the defendant's belief must be measured by an objective standard. We specifically stated the test to determine whether a defendant's belief was reasonable was "whether a reasonable person in defendant's circumstances would have perceived self-defense as necessary" and found the trial court's instruction was erroneous. 243 Kan. at 649.

Upon close examination of our holding in *Stewart,* we find the trial court in this case did not err in refusing to give the modified instruction. There is a distinction with very little difference between the proposed instruction and the instruction given. In both instances the jury would be charged with viewing Degraftenreed's actions as they appeared to Wiggins at the time of the attack.

At trial, Wiggins provided testimony from Dr. Glen Lipson, a psychologist from the Menninger Foundation. Dr. Lipson provided the jury with a description of the prison environment and the subculture and values of persons living within that environment. Dr. Lipson stated the code of behavior within a culture of fear was much different than the code of behavior accepted by others. Specifically, Dr. Lipson described the prison environment as a collection of predators where one was preyed upon by others unless one was "intimidating" or "crazy."

In addition to Dr. Lipson's testimony, Wiggins stated he knew he must kill Degraftenreed or be killed himself. Brownfield testified he was panicky after the theft and wanted to seek protective custody before the thief returned.

The jury was adequately provided with evidence of the fears and unique circumstances of life within a prison environment. Wiggins has failed to establish, however, that the jury did not consider this evidence in determining whether a reasonable person would have believed deadly force was necessary in the incident between Wiggins and Degraftenreed. Therefore, we find the trial court properly instructed the jury on both the subjective and objective standards by which to gauge the justification of use of deadly force.

Wiggins next contends the trial court erred in not allowing cross-examination of a prison officer concerning a prior self-defense killing at the Kansas State Penitentiary.

Wiggins attempted to cross-examine Clyde Weems, an intelligence and investigative officer at the Kansas State Penitentiary, about another incident of one inmate stabbing another. Upon the State's objection to the question, Wiggins argued the evidence was crucial to show the hostile environment which existed at the Kansas State Penitentiary. The trial court found the evidence irrelevant and limited further questioning on the subject.

Wiggins argues that testimony concerning the prison environment was highly relevant and tended to prove that Wiggins acted in self-defense. Thus, he contends the trial court erroneously suppressed relevant evidence tending to prove a material fact. K.S.A. 60-401(b); 60-407.

The scope of cross-examination is a matter within the sound discretion of a trial court and, absent a showing of clear abuse, the exercise of that discretion will not constitute prejudicial error. *State v. Jones,* 233 Kan. 112, 114, 660 P.2d 948 (1983); *State v. Carr,* 230 Kan. 322, 325-26, 634 P.2d 1104 (1981). Testimony concerning a prior unrelated homicide at the Kansas State Penitentiary was properly ruled irrelevant in the present case. We find no abuse of discretion by the trial court in limiting the cross-examination of Officer Weems.

The judgment of the trial court is affirmed.