(898 P.2d 87)

No. 71,216

STATE OF KANSAS, *Appellee*, v. RANDY WESTFAHL, *Appellant.*

Opinion filed June 16, 1995.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., GERNON, J., and J. BYRON MEEKS, District Judge, assigned.

GERNON, J.: In this appeal of his conviction of criminal solicitation to commit first-degree murder, Randy Westfahl contends the trial court made numerous trial errors which require reversal. We affirm.

In February 1993, Westfahl confronted his ex-wife, Terrie Westfahl, outside his trailer. He approached her with his hand raised and struck at her with an ice pick. Terrie ran, but tripped and fell, and Westfahl, according to a witness, jumped on top of her. The witness, Rick Kirkland, who was dating Terrie, struggled with Westfahl over control of the ice pick. Both Kirkland and Terrie suffered injuries as a result of this confrontation.

Westfahl's version of these events is in conflict with that of Terrie and Kirkland.

Westfahl's credibility is substantially undermined by the balance of the record, which indicates that later in February or March 1993, he asked his friend, Jeffrey Yates, if Yates might know of anyone who would be interested in murdering Terrie for money. Yates told his wife about the conversation and eventually contacted the police. A detective gave Yates a business card with a telephone number on it and asked Yates to give the card to Westfahl with the message to call the number "if he wanted something taken care of for him." The phone number was to a telephone line used by the sheriff's department in an undercover capacity. Yates gave the card to Westfahl, who subsequently called the number. Over a period of approximately seven weeks, Westfahl and a detective held a series of telephone conversations in which the murder of Terrie was discussed and payment for such a service was negotiated. Most of the conversations were recorded. Some of the conversations were made from a pay phone, at the detective's instruction, so that officers could secretly photograph Westfahl engaging in the telephone calls from a prearranged location at a prearranged time.

In June 1993, the detective convinced Westfahl that he could arrange Terrie's murder, and an agreement for compensation was made and Westfahl was given some directions. Law enforcement authorities photographed Westfahl as he arrived at a parking lot at a prearranged time and placed a photograph of Terrie and the children, $2,000 in cash, and a yellow piece of paper with infor-

mation written on it in a vehicle which had previously been described to him.

Later that same evening, the detective telephoned Westfahl and asked him to bring a key that he had previously been directed to leave with the other identifying information. Upon his arrival at the scene, Westfahl was arrested and searched, and a key was found in his possession. He was also carrying a business card with the undercover telephone number on it. The key opened a lock on the front door of Terrie's home.

Westfahl's jury trial resulted in a guilty verdict on the charge of solicitation to commit first-degree murder. He was acquitted of aggravated battery charges.

Westfahl first contends the trial court erred in refusing to admit into evidence as exhibits several letters written to Westfahl by his three sons. The letters were written with regard to custody issues unrelated to the criminal case and stated that Terrie had physically abused them.

As part of his defense, Westfahl contended he was distraught over the contents of the letters and was, therefore, susceptible to entrapment by law enforcement. The issue also arose in the context of the defense assertion that the letters should be admitted to demonstrate Westfahl's state of mind from February through June 1993.

The trial court, in a carefully worded ruling, noted that the letters were extremely inflammatory, that their reliability was in question considering the ongoing custody dispute between the parents of the children, and that the specific instances of conduct in the letters were inadmissible pursuant to K.S.A. 60-422 and K.S.A. 60-446.

Westfahl attempted to raise the issue during his redirect examination, and, at that time, the court found that the jury had heard substantial evidence that Westfahl believed his ex-wife was physically abusing their children. The court then allowed Westfahl to testify about specific instances of abuse and the letters he had received.

The question Westfahl raises on appeal is not the information in the letters, but the physical admission of the letters themselves.

Rulings on the admissibility of evidence fall within the discretion of the trial court. *Stowers v. Rimel,* 19 Kan. App. 2d 723, 726, 875 P.2d 1002 (1994).

We note that after the court ruled that specific instances of abuse would be admissible, the court was never asked to reconsider its earlier ruling precluding admission of the letters. The record reflects that Westfahl was allowed to present to the jury specific instances of alleged abuse of the children by Terrie to support his claim of vulnerability to entrapment by the police. The letters, in our view, were only cumulative to other testimony regarding specific allegations of abuse of the children by Terrie. They hold no significance beyond the information contained therein, which was before the jury. We find no prejudicial error in their exclusion.

Westfahl next argues that the criminal solicitation charge should have been severed from the aggravated battery charge.

K.S.A. 22-3202(1) provides:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

"Pursuant to K.S.A. 22-3202(1), charges may be joined if (1) the crimes are the same or similar in character, (2) are based on the same transaction, or (3) constitute parts of a common scheme." *State v. Crawford,* 255 Kan. 47, 53, 872 P.2d 293 (1994). All of the criteria need not be present in order to join charges of two or more crimes in separate counts of one information or to consolidate informations for trial. *State v. Thomas,* 206 Kan. 603, 608, 481 P.2d 964 (1971).

"Whether a defendant may be tried on two or more complaints, informations, or indictments in a single trial rests in the sound discretion of the trial court, within the guidelines established in statute and case law, and its holding will not be disturbed on appeal absent a clear showing of abuse of discretion." *State v. Walker,* 244 Kan. 275, 278, 768 P.2d 290 (1989). Moreover, even if the trial court's consolidation order is determined to be an abuse of discre-

tion, the defendant has the burden of showing prejudice requiring reversal. 244 Kan. at 278.

Kansas courts have declined to find error when a trial court refused to sever charges that were sufficiently similar such that evidence of one would be admissible under K.S.A. 60-455 in the trial of the other and no prejudice would result to the defendant. *State v. Cromwell*, 253 Kan. 495, 512, 856 P.2d 1299 (1993). See *State v. Breazeale*, 238 Kan. 714, 729-30, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986). Evidence of the aggravated battery charge involving Westfahl's attack upon Terrie with the ice pick could have been used by the State to counter Westfahl's entrapment defense by showing intent or absence of mistake or accident. "Conviction is not a prerequisite to introduction of a prior offense under K.S.A. 60-455." *State v. Myrick & Nelms*, 228 Kan. 406, 420, 616 P.2d 1066 (1980).

The jury was instructed that "[e]ach crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." The jury found Westfahl guilty of solicitation but acquitted him on the aggravated battery charges, suggesting that it followed the court's instructions. Westfahl's assertion that joinder of the charges caused the jury to return a compromise verdict is mere speculation and wholly unsupported by the record.

Westfahl also contends the trial court committed reversible error by restricting his cross-examination of a prosecution witness.

Thomas Fry testified that in October or November 1990, he overheard Westfahl talking to a third person about killing his (Westfahl's) wife. Fry thought Westfahl was joking and replied that he would do it. Westfahl then asked Fry to go for a ride with him. During the ride, Westfahl drove him past Terrie's house. When the prosecutor asked Fry if he could remember the exact location of Terrie's home, Fry answered, "It was off on a dirt road about six blocks from the gas station, you know. It was off the main road down a dirt road. It was the last house on it, . . . and he drove me down by there."

Westfahl then took Fry to his trailer and showed him a Charles Bronson movie about a "hit" man. He told Fry that he wanted Terrie shot, but he wanted it to look like she had interrupted a burglary in progress at her home. He told Fry he would pay him $5,000 for the murder of Terrie. Westfahl later gave Fry a sack and told him to put it in his trunk. Fry later opened the sack and discovered a handgun, a box of shells, a pair of latex gloves, and a $100 bill.

Westfahl's counsel attempted to impeach Fry by showing that he really did not know where Terrie lived and was making up the whole incident.

The record reflects that the court allowed defense counsel ample latitude in trying to impeach Fry and, finally, limited the questioning by Westfahl's counsel as being repetitive. "The scope of cross-examination is a matter within the sound discretion of a trial court and, absent a showing of clear abuse, the exercise of that discretion will not constitute prejudicial error." *State v. Wiggins*, 248 Kan. 526, 530, 808 P.2d 1383 (1991). See *State v. Parker*, 213 Kan. 229, 231, 516 P.2d 153 (1973) (discretion of trial court extends to permitting, restricting, or refusing to allow protracted cross-examination of witness covering ground which is useless, irrelevant, or previously covered). "Repetitious questions may be excluded and such is not an abuse of the trial court's discretion." *State v. Jaso*, 10 Kan. App. 2d 137, 143, 694 P.2d 1305 (1985).

Contrary to Westfahl's assertions, the record reflects that defense counsel had sufficient opportunity to demonstrate any problems with Fry's memory, therefore satisfying the constitutional right of confrontation. The trial court did not abuse its discretion in restricting defense counsel's cross-examination of Fry.

Westfahl next contends that the trial court's instruction on criminal solicitation was clearly erroneous and, therefore, demands reversal.

K.S.A. 21-3303(a) defines criminal solicitation as "commanding, encouraging or requesting another person to commit a felony, attempt to commit a felony or aid and abet in the commission or attempted commission of a felony for the purpose of promoting or facilitating the felony."

The information charging Westfahl with the crime of criminal solicitation states:

"[I]n the County of Sedgwick, and State of Kansas, on or between the 22nd day of April, 1993 and the 15th day of June, 1993, one RANDY J. WESTFAHL, did then and there unlawfully, willfully, command, encourage, or request another person, to-wit: Terry Parham, to commit or attempt to commit a felony, to-wit: First Degree Murder, for the purpose of promoting or facilitating the said felony."

Before the jury instructions conference, defense counsel submitted the following proposed instruction for the court's consideration.

"The defendant is charged with the crime of criminal solicitation to commit the crime of first degree murder, a felony. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:
1. That the defendant intentionally (commanded) (encouraged) (requested) Terry Parham to (commit) (attempt to commit) the crime of first degree murder, a felony;
   or
   That
   That the defendant intentionally (commanded) (encouraged) (requested) Terry Parham to aid and abet in the (commission) (attempted commission) of the crime of first degree murder, a felony, for the purpose of promoting or facilitati[ng] the felony;
2. *That the defendant intended that the crime of first-degree murder be committed*; and
3. That this act occurred on or about the 22nd day of April, 1993, in Sedgwick County, Kansas." (Emphasis added.)

The trial court did not include Westfahl's proposed instruction in its final version of the jury instructions. When asked by the court at the instructions conference if he had any objections to the instructions prepared by the court, defense counsel replied, "I have no objection to the instructions as they are presently constituted."

The trial court's instruction on the crime of criminal solicitation was taken verbatim from PIK Crim. 3d 55.09 and provided as follows:

"The defendant is charged with the crime of solicitation to commit the crime of first degree murder, a felony. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:
1. That the defendant intentionally commanded, encouraged or requested Terry Parham to commit or attempt to commit the crime of first degree murder, a felony;

2. That this act occurred on or between the 22nd day of April, 1993, and the 15th day of June, 1993, in Sedgwick County, Kansas."

A party may not assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for objection, unless the instruction is clearly erroneous. K.S.A. 22-3414(3). "An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict." *State v. Deavers*, 252 Kan. 149, 164-65, 843 P.2d 695, *cert. denied* 125 L. Ed. 2d 676 (1992). As Westfahl did not object to the giving of the above instruction, this court may only reverse if the failure to include the disputed language was clearly erroneous.

Westfahl argues that PIK Crim. 3d 55.09, which tracks the language set forth in K.S.A. 21-3303(a), and the corresponding instruction given in the present case are incorrect statements of the law because they do not require any specific intent for the commission of the crime of solicitation. Under PIK Crim. 3d 55.09, proof that the command, encouragement, or request was made for the purpose of promoting or facilitating the felony need only be provided where an aiding and abetting theory is advanced by the prosecution. Westfahl contends that for a criminal solicitation to occur, the command, encouragement, or request of another to commit a felony must be made with the specific intent of promoting or facilitating the particular felony.

The State contends that it is only the party who aids and abets in the commission of the crime who must possess the intent to promote or facilitate the commission of the felony, not the solicitor. As support for its position, the State relies on another PIK instruction which defines an aider and abettor as "[a] person who, either before or during its commission, intentionally [aids and abets] another to commit a crime *with intent to promote or assist in its commission*." (Emphasis added.) PIK Crim. 3d 54.05.

The Kansas Supreme Court, in *State v. Edwards*, 250 Kan. 320, 826 P.2d 1355 (1992), considered the issue of whether the offenses

of criminal solicitation and the theory of aiding and abetting each contained an element which was not encompassed within the other and, therefore, did not merge. The court stated as follows:

"The crime of making a false writing includes 'making or drawing *or causing to be made or drawn*' any false writing. (Emphasis added.) K.S.A. 21-3711. The evidence established that Wanda and Sherman caused false writings *to be made or drawn* on behalf of the purported students. [Emphasis in original.] The separate crime of criminal solicitation was complete when Wanda and Sherman commanded, encouraged, or requested the individuals: (1) to make false writings, or (2) to aid Wanda and Sherman in the commission of making a false writing for the purpose of promoting or facilitating the crime." 250 Kan. at 330.

PIK Crim. 3d 55.09 and K.S.A. 21-3303 require that an individual must intentionally command, encourage, or request another to commit a particular felony to be criminally liable for solicitation. This language clearly contains an element of specific intent and implies that the individual must act with the intent that the felony would be committed. The language "for the purpose of promoting or facilitating the felony," K.S.A. 21-3303, logically relates to one who is accused of aiding and abetting the crime, for without the specific intent to promote or facilitate a felony, the actions of the aider and abettor would not be subject to criminal liability. Under K.S.A. 21-3303(a), the crime of criminal solicitation was complete when Westfahl intentionally commanded, encouraged, or requested Parham to murder his ex-wife. The additional language in the complaint suggesting otherwise was superfluous.

Finally, Westfahl contends that he was substantially prejudiced and denied a fair trial by the cumulative effect of the errors of the trial court and asks this court to reverse his conviction and remand the case for a new trial.

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial.' " *State v. Lumbrera*, 252 Kan. 54, 57, 845 P.2d 609 (1992) (quoting *Taylor v. State*, 251 Kan. 272, Syl. ¶ 6, 834 P.2d 1325 [1992]). See *State v.*

*Castoreno,* 255 Kan. 401, 411, 874 P.2d 1173 (1994). In the present case, all of Westfahl's allegations of error are without merit.

Affirmed.