No. 78,409

STATE OF KANSAS, *Appellee,* v. JOSE AVALOS, *Appellant.*
(974 P.2d 97)

Opinion filed January 22, 1999.

*Mary D. Prewitt,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Tamara S. Hicks,* assistant county attorney, argued the cause, and *Lois K. Malin,* assistant county attorney, *John P. Wheeler, Jr.,* county attorney, and *Carla J. Stovall,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Jose Avalos appeals from the district magistrate judge's order authorizing his prosecution as an adult pursuant to K.S.A. 38-1636(f).

During the early morning hours of February 4, 1996, there were a number of young people at a party at 1809 Chesterfield in Garden City, Kansas. Many were members of the YC gang. A fight began in which Juan Ayon was hit by six or more people, including Adam Valdez and Avalos. When Ayon fell down, his assailants hit and kicked him. Then Richard Garcia, the gang's leader, said to "take care of him." Avalos and Valdez left the party in Juan Ayon's car with Ayon in it.

Avalos and Valdez drove Ayon to a gang hangout just outside the city limits. They took him out of the car and beat him some more. Then, with Avalos standing outside the car, Valdez drove back and forth over Ayon. Avalos and Valdez left Ayon's body at the hangout, drove into town, and abandoned Ayon's car.

The cause of Ayon's death was internal bleeding from massive trauma. In the pathologist's opinion, "the instrumentality of death

was a vehicle." He believed that Ayon had been run over at least three times by an automobile.

Avalos was born February 17, 1981. He was nearly 15 at the time of Ayon's murder. He lived at home with his mother; his school attendance was poor. He had been suspended several times for long periods. In addition, when not suspended, he did not attend regularly.

Avalos's first contact with law enforcement was in August 1993, when he was 12. By mid-February 1996, 31 contacts between Avalos and law enforcement authorities had been recorded. The record shows that a contact did not necessarily involve a violation of law, but it does not specify how many did and did not. He was known by law enforcement officers as a gang member, and all contacts with Avalos therefore were described as "gang-related." The record contains no information about juvenile charges or adjudications for Avalos.

Gordon Duncan, a psychologist, administered a series of tests for the purpose of assisting the magistrate judge in determining Avalos' intellectual and psychological maturity. Avalos' IQ was measured at 73, with 69 being considered mentally deficient and 70 to 79 "borderline." His functioning is that of a 9- to 10-year-old child, and he views the world that way. According to Duncan, IQ does not measure sophistication. There is a correspondence between IQ and maturity, however, in that maturity is based "on knowledge that one gains through gaining intellect." Avalos' personality was described by Duncan as being "totally dependent," and he was said to be "suffer[ing] from a low-grade dysthymic-type depression." Duncan testified that Avalos would benefit more from a treatment plan in a rehabilitation process that was designed for a 9-or 10-year-old than from one designed for an adult. The district magistrate authorized that Avalos be prosecuted as an adult. Avalos eventually entered an *Alford* plea of guilty to felony murder, and he was sentenced to life imprisonment.

K.S.A. 38-1681(a) provided that a juvenile could take an appeal from an order authorizing prosecution as an adult but that it could not be taken until after conviction. The journal entry of sentencing was signed on December 13 and filed on December 16, 1996. On

December 17, 1996, Avalos filed a timely notice of appeal from the order authorizing prosecution as an adult. See K.S.A. 38-1681(b).

Avalos was 14 years old at the time of the offenses, less than 2 weeks from his 15th birthday. K.S.A. 38-1636(f)(1) provided that a juvenile 14 years of age could be prosecuted as an adult if "there is substantial evidence that the respondent should be prosecuted as an adult for the offense with which the respondent is charged." K.S.A. 38-1636(e) provides:

"In determining whether or not prosecution as an adult should be authorized, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant under the Kansas juvenile code or a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution."

The standard applied by this court in reviewing the decision to authorize prosecution as an adult is whether it is supported by substantial evidence. See *State v. Claiborne*, 262 Kan. 416, 420, 940 P.2d 27 (1997). Avalos contends that the district magistrate's consideration of the question of certification was inadequate. He contends that she failed to mention the statutory factors and misinterpreted data. As a result, the argument continues, the magistrate judge concluded that Avalos should be prosecuted as an adult even though the State did not present substantial evidence to support the authorization.

Essentially the same complaints were made about the trial judge's decision in *State v. Vargas*, 260 Kan. 791, 926 P.2d 223 (1996). This court concluded:

"While the judge's analysis could have been more detailed, his comments establish that he considered not only the gravity of the offense, but also Vargas' prior juvenile history, the pending juvenile matters, the aggressive manner in which the crime was committed, the fact that the crime was against a person rather than property, and the interest of the community in prosecuting the defendant as an adult. Under these circumstances and mindful that the failure to find one or more of the factors adverse to respondent does not preclude the trial court from concluding that respondent should be prosecuted as an adult, [citation omitted], we hold there was substantial evidence to support the court's decision to allow the prosecution of Vargas as an adult." 260 Kan. at 800-01.

Here are the pertinent portions of the magistrate judge's comments in the present case:

"[T]his is a very difficult case in which to make a decision as to certification. I think the biggest problem, or the hardest criteria to determine hinges upon the evaluation and testimony of Gordon Duncan.

"In reviewing the evaluation and my notes concerning his testimony, it appears, obviously, that this young man does not function IQ wise at his chronological age wise. But, in further review and consideration, that all appears to relate to education.

"In the breakdown of the different sections that this respondent falls in . . . [i]t all goes to grade average and grade age equivalent: letter or word identification; comprehension; calculation; applied problems; dictation; writing; science; social studies; humanity. All of those tend to go toward education.

"It was clear from the testimony that this young man has chosen of his own volition not to attend school. Which obviously would lead one to believe that he is not going to function at age 14 or 15, which he didn't go to school in these areas. But you also have to look at the other testing and consider all of that.

"And, then, in reviewing the statutory requirements and consideration it is fairly clear that in most, if not all, of the factors to be considered, the State has more than met its burden of proof.

"The main hangup, as I stated previously, was the evaluation. But in reviewing everything that was presented in the totality of the circumstances, I am going to find that the State has met its burden and certify this young man to stand trial as an adult."

In response to Avalos' complaint that the magistrate judge never mentioned the statutory factors, the State cites *Claiborne* and *Vargas* for the proposition that each statutory factor must be consid-

ered but not necessarily mentioned. In *Claiborne*, the district court several times mentioned that there were eight factors to be taken into consideration, expressly cited four of them, and dwelled on only one. This court concluded that there was substantial evidence to support Claiborne's certification. 262 Kan. at 421. In *Vargas*, the district judge noted that the statutory factors were to be considered, and this court concluded that "his comments establish that he considered" nearly all of them. 260 Kan. at 800-01.

In the present case, the district magistrate's comments on the record reveal very little about her deliberations. As defendant points out, the magistrate judge failed to mention "even one" of the statutory factors. However, K.S.A. 38-1636(e) does not require the magistrate to mention the factors. This court's standard applies to the evidence rather than to the analysis of the decision maker. A review of the evidence as it pertains to the statutory factors shows that there is substantial evidence supporting the certification. (1) The offense is first-degree murder, and the evidence shows that Avalos participated in Ayon's murder because he was told to do so by the leader of his gang. (2) The murder was committed in an aggressive, violent, premeditated, and willful manner. (3) The offense was against a person. (4 and 5) The record contains no information on adjudicated or unadjudicated juvenile offenses or charges. K.S.A. 38-1636(e) provides that "[t]he insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue." (6) Duncan's testimony and report indicate that Avalos is intellectually very immature and that he is "a prime candidate for gangs" due to his "low self-esteem and his lack of family support and his lack of general populace support." (7 and 8) Duncan testified that Avalos would benefit more from a treatment plan in a rehabilitation process that was designed for a 9-or 10-year-old than from one designed for an adult. There was no evidence of the availability of a plan or process designed for a 9-or 10-year-old. Avalos' demonstrated affinity for gang membership and perpetration of a violent murder at the direction of a gang leader may indicate that the community would be better served and protected by criminal prosecution than by juvenile adjudication. In any event, even if the

evidence was inadequate as to any one factor, such inadequacy does not preclude prosecution as an adult.

We conclude that there is substantial evidence to support the magistrate's decision to certify the prosecution of Avalos as an adult. There was no error in certifying Avalos for prosecution as an adult.

The judgment of the district court is affirmed.