No. 87,095

STATE OF KANSAS, *Appellee*, v. LEROY DEAN, II, *Appellant*.

(46 P.3d 1130)

Opinion filed May 31, 2002.

*Sarah Ellen Johnson*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Leroy Dean was convicted by a jury of one count of forgery. K.S.A. 2001 Supp. 21-3710(a)(2). Because he was on post-release supervision at the time of this crime, Dean was sentenced to 14 months' incarceration. See K.S.A. 2001 Supp. 21-4603d(a)(1). He appeals his conviction and sentence.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

The issues are whether: (1) the district court erred in finding that under *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the State did not use a peremptory strike for a discriminatory purpose; (2) the evidence was sufficient to support Dean's conviction; and (3) Dean's constitutional rights were violated under *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), when he received a prison sentence, rather than probation.

Finding no error, we affirm.

## FACTS

Hershel Ritchie and Leroy Dean were incarcerated at the El Dorado Correctional Facility. Both men were scheduled to leave on the same day. During the release process, the inmates' personal items were returned and their prison bank accounts were closed. Ritchie, who was 76 years old, had trouble hearing. The prison staff handling his bank transaction spoke loudly to him. Dean was close by. After closing his bank account, Ritchie held a check for $900 and $147 in cash.

Both Ritchie and Dean were returning to Wichita. They were transported to the El Dorado bus station in the same cab and rode the same bus to Wichita. Minutes after arriving at the bus station in Wichita, Ritchie called the police. He alleged that Dean had robbed him of his $900 check. Ritchie testified that after he left the bus and walked toward the Wichita Transit Center, Dean attempted to steal a package that Ritchie was carrying. When Dean noticed the check in Ritchie's shirt pocket, Dean released the package and said, "No, that's what I want." Then, Dean pushed Ritchie down while taking the check and ran off in the direction of a bank.

When Dean arrived at home, he asked his mother for assistance in cashing the check. He told her that he won the check playing poker in prison. The check, made out to Hershel Ritchie, was purportedly endorsed with Ritchie's signature, only the last name was first and the first name last. Dean's mother endorsed the check at Intrust Bank, where she had an account. Dean was given the cash.

Neither Horn nor the bank teller saw Dean endorse the check. Dean was charged with one count of robbery and one count of forgery.

The jury acquitted Dean of the robbery charge. At sentencing, the State requested that Dean receive 14 months' incarceration because he was on postrelease supervision at the time he committed this crime. The sentencing court imposed 14 months' incarceration.

## DISCUSSION

### The *Batson* Issue '

Dean contends that the State impermissibly used a peremptory challenge to keep an African-American off his jury. The State used one peremptory challenge to remove D.W., one of two African-Americans from the jury. Dean's counsel lodged a *Batson* objection. The State gave its reason for striking D.W. The district court accepted the State's reason as racially neutral. Dean now takes issue with the State's explanation of the strike.

Our standard of review is whether the district court abused its discretion in determining if the challenged strike was constitutionally permissible. *State v. Vargas*, 260 Kan. 791, Syl. ¶ 1, 926 P.2d 223 (1996). We review the district court's findings with deference. *State v. Conley*, 270 Kan. 18, 25, 11 P.3d 1147 (2000).

We focus on the State's explanation for striking the challenged juror. Dean and two venirepersons, P.O. and D.W., were African-American. According to Dean's counsel, D.W. and Dean appeared to be close in age. When asked to explain his strike of D.W., the prosecutor said:

"Your Honor, there [were] numerous times during the jury selection when the defendant and [D.W.] made eye contact. I don't know the reasoning for the eye contact, but I did not — I can't say that the defendant made eye contact with other jurors, only with [D.W.], which caused me concern. I would note that there are other African Americans that were left on the jury. . . .

. . . .

"I do agree with the statement that his questions were neutral, that it is the eye contact between the defendant and [D.W.] that caused me concern."

Over Dean's objection, the district court ruled that the State's basis was race-neutral. The district court also noted a lack of dis-

criminatory pattern. Dean's counsel argued that he and Dean sat with their backs to the jurors and he never saw Dean turn around.

An appellant has the burden of furnishing a record that affirmatively shows that prejudicial error occurred in the district court. Without such a record, we presume that the action of the district court was proper. *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997).

Dean essentially argues that the State's explanation was a mere pretext for discrimination. He cites *State v. Hood*, 245 Kan. 367, 780 P.2d 160 (1989), to support his contention that we should be especially sensitive where "body language" is advanced as a reason for striking a juror of the defendant's race. In *Hood*, the State exercised its peremptory challenges to strike the only two black jurors.

The State's explanation in *Hood* for striking one of the black jurors included his "body language." The juror sat with his arms across his chest and seemed to have "personal hostility" toward the prosecutor in his physical responses and tone of voice. 245 Kan. at 370. We noted that hostility toward the prosecution may be taken into consideration when the district judge determines whether the prosecutor has a valid and neutral reason for striking a juror. We added: "Again, however, the trial judge must be particularly sensitive when body language, alone, is advanced as a reason for striking a juror of the defendant's race." 245 Kan. at 374. We found that the district court did not err in *Hood* by finding that the State had valid, neutral, and nondiscriminatory reasons for the exercise of its peremptory challenges. 245 Kan. at 376.

Dean argues that here, eye contact alone stood as the basis for the peremptory strike and that the strike implies that "two young black men would share a connection." He observes that there was no indication that D.W. harbored hostility toward the State.

The State reasons that there was "improper communication" between D.W. and Dean. The prosecutor was concerned about the numerous times Dean allegedly made eye contact with D.W., whereas he did not make eye contact with the other jurors. The record reflects that before the State made its peremptory strike, it told Dean's counsel that Dean was looking at the juror.

Other jurisdictions have upheld peremptory strikes based upon counsel's intuition. See *Polk v. Dixie Ins. Co.*, 972 F.2d 83, 86 (5th Cir. 1992) (accepting eye contact, or lack thereof, as legitimate rationale); *Palmer v. State*, 654 N.E.2d 844, 847 (Ind. App. 1995) (noting that prosecutor's reason may be based on juror's "bare looks and gestures"); *State v. Jones*, 123 N.M. 73, 74-75, 934 P.2d 267 (1997) (accepting prosecutor's explanation of lack of eye contact and lack of assertiveness).

We also note that P.O. served on the jury. The State chose not to exercise a challenge to strike P.O., although he was familiar with the crime scene. A factor to be considered in determining whether strikes are discriminatory is the presence of other members of the same minority on the jury and the failure of the State to remove such members when given the opportunity. *State v. Kingsley*, 252 Kan. 761, 778-79, 851 P.2d 370 (1993). The race-neutral reason given by the prosecutor for striking D.W. is facially reasonable. See *State v. Betts*, 272 Kan. 369, 396-97, 33 P.3d 575 (2001). The district court did not abuse its discretion.

## Sufficiency of the Evidence

Next, Dean argues that his conviction was not supported by sufficient evidence. Our standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). If the essential elements of the charges are supported by any competent evidence, the convictions must stand. *State v. Adams*, 269 Kan. 681, 684, 8 P.3d 724 (2000). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Wimbley*, 271 Kan. 843, Syl. ¶ 2, 26 P.3d 657 (2001).

K.S.A. 2001 Supp. 21-3710 provides, in pertinent part:

"(a) Forgery is knowingly and with intent to defraud:

(1) Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such person; or altering any written instrument in such manner that it purports to have been made at another time or with different provisions without the authority of the maker

thereof; or making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority;

(2) issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed."

Dean was charged with violating subsection (2). Ritchie testified that he did not endorse the check and denied giving anyone, including Dean, permission to endorse the check. According to Ritchie, the name on the back of the check was not written in his handwriting.

Dean argues that there was no evidence that the signature on the back of the check did *not* match Ritchie's handwriting, nor was evidence offered to show that the signature *did* match Dean's handwriting. Repeatedly arguing that Ritchie lacked credibility, Dean notes that the only evidence about who endorsed the check came from Ritchie, the alleged victim. We do not reweigh the testimony or pass on the credibility of witnesses. *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997).

The record shows that Dean saw the check in Ritchie's shirt pocket. Ritchie and Dean were together at the bus station when the check was stolen from Ritchie. Ritchie last saw Dean running off in the direction of a bank. When the police arrived at the scene, Ritchie appeared visibly shaken and had trouble breathing. EMS workers gave him oxygen. Dean told his mother that he won the check while playing poker in prison. According to Ritchie, the signature was not his. Also, Dean and his mother cashed the check at a bank shortly after it was taken from Ritchie. There was sufficient evidence, when viewed in a light most favorable to the State, to convince us that a rational factfinder could have found Dean guilty of forgery beyond a reasonable doubt.

### The *Apprendi* Issue

Finally, Dean argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), his constitutional rights were violated when the district court imposed a prison sentence rather than presumptive probation. We disagree.

The State objects because Dean's constitutional claim was not presented to the district court. Generally, "[w]hen constitutional grounds are asserted for the first time on appeal, they are not properly before [this court] for review." *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 (1996). However, in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967), we recognized exceptions to the general rule. We recently relied on the *Pierce* exceptions in order to address an *Apprendi* argument raised for the first time on appeal in *State v. Gould*, 271 Kan. 394, 404-05, 23 P.3d 801 (2001). We follow our reasoning in *Gould* and consider the sentencing issue here.

*Apprendi* held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." 530 U.S. at 490. Further, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" 530 U.S. at 494.

Dean committed the forgery offense while on postrelease supervision. Under K.S.A. 2001 Supp. 21-4603d(f), the district court was authorized to impose incarceration for the new felony offense rather than presumptive probation:

"When a new felony is committed while the offender is incarcerated and serving a sentence for a felony or while the offender is on probation, assignment to a community correctional services program, parole, conditional release, or postrelease supervision for a felony, a new sentence shall be imposed pursuant to the consecutive sentencing requirements of K.S.A. 21-4608, and amendments thereto, and the court may sentence the offender to imprisonment for the new conviction, even when the new crime of conviction otherwise presumes a nonprison sentence. In this event, *imposition of a prison sentence for the new crime does not constitute a departure.*" (Emphasis added.)

A "departure" is a sentence which is inconsistent with the presumptive sentence. K.S.A. 21-4703(f). Because Dean's K.S.A. 2001 Supp. 21-4603d(f) prison sentence is not considered a departure, it is a presumptive sentence. As such, Dean's prison sentence does

not exceed the statutory maximum punishment for his crime, and *Apprendi* does not apply.

Affirmed.