No. 122,118

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRISTAN T. LETTERMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

When appellate courts interpret statutes, their primary aim is to give effect to the legislature's intent, articulated through the language the legislature has chosen. Courts therefore give common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.

2.

Only when the meaning of a statute's text is unclear do courts consider other interpretive tools, such as legislative history or canons of statutory construction.

3.

The absence of a definition for a common word within a statute does not necessarily render the statute ambiguous.

4.

K.S.A. 2020 Supp. 21-5513(a)(2)'s prohibition of "publicly exposing a sex organ" is not ambiguous. Consistent with the common meaning of "publicly" and with human

experience, K.S.A. 2020 Supp. 21-5513(a)(2) prohibits exposing oneself in a manner observable by or in a place accessible to the public.

5.

The Sixth and Fourteenth Amendments to the United States Constitution require that any fact, other than a prior conviction, that increases a crime's penalty beyond the statutory maximum must be submitted and proved to a jury beyond a reasonable doubt. Findings that result in the extension of postrelease supervision increase the duration of a person's sentence and are thus subject to these same constitutional limitations.

6.

A Sixth Amendment violation based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), is not a structural error and is therefore subject to a harmless-error analysis.

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed May 28, 2021. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., GARDNER and WARNER, JJ.

WARNER, J.: A jury convicted Tristan Letterman of lewd and lascivious behavior after a woman and her children observed him masturbating in the alley outside her backyard's chain-link fence. At sentencing, the district court imposed 60 months' postrelease supervision, instead of the standard 12-month term, based on its determination that Letterman committed a sexually motivated offense—that is, he

exposed himself for his own sexual gratification. Letterman now appeals, challenging the sufficiency of the evidence and the constitutionality of his extended 60-month postrelease-supervision term. After carefully considering the record and the parties' legal arguments, we affirm Letterman's conviction and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to Letterman's conviction took place behind the house where D.H. and her family lived. The house's driveway ran from the street and through the side yard before wrapping around the back of the house, where the garage was located. A privacy fence ran along the side yard, while a chain-link fence separated the backyard from a nearby alley. A tree grew in the alley near where the two fences met.

On an August afternoon in 2018, D.H. pulled into the driveway with her three children, who were between the ages of five and seven years old. As she did so, she saw a man sitting against the tree outside the chain-link fence, facing her house; his pants were halfway down, and he was masturbating with one hand and holding a syringe in the other. D.H. took her kids inside the house and called 911.

As they awaited a police response, several adult members of D.H.'s family told the man to leave. He left after 15 minutes but returned about an hour later, walking down the sidewalk in front of the house. D.H. again called 911 and began following the man; she eventually flagged down Wichita police officers on bicycle patrol, explained what happened, and described the man and the direction he was walking.

Police arrested Letterman, who matched D.H.'s description, a few blocks away from her house. Officers searched Letterman and found various drug-related items, including syringes, pipes, and a small plastic bag. They also found a pair of girl's

3

underwear and a stuffed animal, both of which belonged to D.H.'s daughter. Officers discovered trash and a blanket under the tree behind D.H.'s house.

Based on this evidence, a jury found Letterman guilty of lewd and lascivious behavior, a felony because it occurred in the presence of D.H.'s young children. The district court imposed a nine-month prison sentence for the offense. The court also found that Letterman's conviction was sexually motivated—that is, it was done for his own sexual gratification—and thus imposed 60 months of postrelease supervision instead of the presumptive 12-month supervision term.

DISCUSSION

On appeal, Letterman challenges aspects of his conviction and his sentence. He argues that the evidence was not sufficient to support his conviction for lewd and lascivious behavior, as that offense requires a showing that Letterman publicly exposed himself—a phrase Letterman interprets to require exposure in a public place. And he asserts that the district court improperly engaged in judicial fact-finding when it imposed the extended postrelease-supervision term. We first address the evidence supporting Letterman's conviction and then turn to the sentencing question.

1. *Letterman's conviction was supported by sufficient evidence.*

When a defendant challenges the sufficiency of the evidence to support his or her conviction, an appellate court reviews the evidence "in a light most favorable to the State" to ascertain whether a rational fact-finder "could have found the defendant guilty beyond a reasonable doubt." *State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016). Practically speaking, this standard requires appellate courts to affirm a conviction on sufficiency grounds as long as there is some evidence in the record to support each element of the offense. See *State v. Dobbs*, 297 Kan. 1225, 1238, 308 P.3d 1258 (2013). Because we were not present at trial to observe witnesses' demeanor or hear their

4

testimony, we cannot reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015).

The evidence regarding Letterman's conduct was largely undisputed—D.H. and her children saw him masturbating in the alley on the other side of the chain-link fence behind their house. Letterman does not quibble with D.H.'s account of these events. Instead, he frames his sufficiency challenge as an issue of statutory interpretation, arguing that the evidence presented at trial did not show that he "publicly exposed" himself within the meaning of Kansas law.

Letterman was convicted for a violation of K.S.A. 2020 Supp. 21-5513(a)(2), which prohibits "publicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another." This section includes two types of lewd and lascivious behavior: behavior involving public exposure and behavior involving exposure to a nonspouse without that person's consent. Consistent with the charges filed by the State, the district court here instructed the jury only as to the public-exposure behavior—that the State was required to prove that Letterman "publicly exposed his sex organ with the intent to arouse or gratify the sexual desires of the defendant or another."

Letterman points out that K.S.A. 2020 Supp. 21-5513(a)(2) does not define the term "publicly." And he argues that the phrase *publicly exposing* could involve multiple types of conduct, such as when the exposure occurs in a public location or when the circumstances give rise to "foreseeability that one's acts may be seen by another." See *State v. Albin*, No. 114,712, 2016 WL 6651871, at *4 (Kan. App. 2016) (unpublished opinion). Given the various behaviors that could be considered "public," Letterman argues that the statute is ambiguous and that such ambiguity must be resolved in his

5

favor. See *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016) (rule of lenity indicates that ambiguous criminal statutes should be construed in favor of the accused).

When appellate courts interpret statutes, our primary aim is to give effect to the legislature's intent, as articulated through the language the legislature has chosen. *Keel*, 302 Kan. 560, Syl. ¶ 5. Our analysis therefore begins with the statutory language, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). "'When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it.'" 304 Kan. at 409. Instead, we apply the plain language as it is written. Only when the text's meaning is unclear do we consider other interpretive tools, such as legislative history or canons of statutory construction (such as the rule of lenity Letterman references). See 304 Kan. at 409; see also *State v. Williams*, 303 Kan. 750, 760, 368 P.3d 1065 (2016) (rule of lenity only becomes relevant when there is reasonable doubt as to a statute's meaning).

It is true, as Letterman indicates, that K.S.A. 2020 Supp. 21-5513(a)(2) does not explicitly define what it means to "publicly" expose a person's sex organ. But the absence of a definition does not necessarily render the statute ambiguous. Indeed, the vast majority of words and phrases used in statutes are not accompanied by statutory definitions, and definitions are often unnecessary when words are given their common and ordinary meanings. We are thus left to consider whether the statute is unclear when it criminalizes the act of "publicly exposing" oneself. It is not.

As a starting point, "public" is commonly understood to mean "exposed to general view" or "open." Merriam-Webster Online Dictionary, at https://www.merriam-webster.com/dictionary/public. When an act is done "publicly," it is done "in a manner observable by or in a place accessible to the public." Merriam-Webster Online Dictionary, at https://www.merriam-webster.com/dictionary/publicly. Public acts are thus

differentiated from private conduct, which is "intended for or restricted to the use of a particular" audience; when something occurs "in private," it by definition does not occur "openly or in public." See Merriam-Webster Online Dictionary, at https://www.merriam-webster.com/dictionary/private.

Though we did not directly quote these common definitions, this court recently discussed this public-versus-private distinction in *City of Wichita v. Trotter*, 58 Kan. App. 2d 781, 475 P.3d 365 (2020), *rev. denied* 312 Kan. 890 (2021). *Trotter* involved a violation of a Wichita ordinance requiring a license to run an entertainment establishment that was "open to the public." 58 Kan. App. 2d at 802. While the Wichita Municipal Code included definitions of various terms, the Code—like K.S.A. 2020 Supp. 21-5513(a)(2)—did not define what was meant by "public." 58 Kan. App. 2d at 805. But we nevertheless found, consistent with the common meaning of that term, that the Code's reference to "public" events intended to distinguish conduct requiring a license from private conduct, like family gatherings in a person's home. And we underscored that jurors commonly understand what it means for conduct to be public because "whether something is public or private tends to be a question of human experience." 58 Kan. App. 2d at 805.

Other decisions of this court have similarly concluded that statutory references to a public act, such as the public exposure involved in lewd and lascivious behavior, implicate the commonly understood "foreseeability that one's acts may be seen by another." *Albin*, 2016 WL 6651871, at *4. We explained in *State v. Throne*, No. 119,428, 2020 WL 3022866, at *5 (Kan. App. 2020), *rev. denied* 313 Kan. ___ (March 31, 2021), that this common meaning is "fact-dependent" and "turns on the time, place, and manner of the act." Thus, "[w]hen jurors are instructed that an offense requires a public act, they are called on to listen to the evidence, consider the facts, and determine whether, in their practical experience, the State proved public conduct." 2020 WL 3022866, at *6.

The language of K.S.A. 2020 Supp. 21-5513(a)(2) demonstrates that the legislature intended this common understanding of public conduct to apply to the definition of lewd and lascivious behavior. As we have noted, the legislature envisioned two types of unlawful exposure of a sex organ—publicly exposing oneself and exposing oneself to a nonconsenting person who is not the accused's spouse. The second category of conduct includes nonconsensual exposure that would traditionally be considered private. See, e.g., *State v. Bryan*, 281 Kan. 157, Syl. ¶ 2, 130 P.3d 85 (2006) (affirming conviction for lewd and lascivious behavior when exposure occurred in nonconsenting person's bedroom and holding that the statute does not require the victim to actually perceive the offending act). But the first category of conduct, of which the jury was instructed here, requires the exposure to have occurred "publicly."

Letterman acknowledges this distinction but argues that it would make more sense to limit criminal liability for public exposure to those exposures that occur "in a public place." Yet Letterman's construction would require us to rewrite the statutory definition of lewd and lascivious behavior. The statute states that it is unlawful to "publicly expose" one's sex organ, not merely to expose oneself in a public venue. Indeed, the Kansas Legislature amended the definition of lewd and lascivious behavior in 1993 from prohibiting "the exposure of a sex organ in a public place" to prohibit "publicly exposing a sex organ." Compare K.S.A. 21-3508(1)(b) (Ensley 1988), with K.S.A. 21-3508(a)(2) (revised effective July 1, 1993) and K.S.A. 2020 Supp. 21-5513(a)(2). Accord *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012) (when the legislature revises statutory language, courts presume it intended to change the law that existed before the amendment). And we are called on to interpret and apply the language of K.S.A. 2020 Supp. 21-5513(a)(2) as it is written, not to add language that would change the statute's meaning. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Questions of public policy, including the definition and extent of criminal conduct, are matters "for legislative and not judicial determination." *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016).

In sum, we reject Letterman's argument that K.S.A. 2020 Supp. 21-5513(a)(2) is ambiguous. Instead, we conclude—consistent with the common meaning of "publicly" and with human experience—that "publicly" exposing a person's sex organ within the meaning of K.S.A. 2020 Supp. 21-5513(a)(2) involves exposing oneself "in a manner observable by or in a place accessible to the public." Merriam-Webster Online Dictionary, at https://www.merriam-webster.com/dictionary/publicly. Applying this common meaning here, Letterman exposed his penis when he was masturbating in the alley and next to a chain-link fence in a manner that was observable, at a minimum, to D.H. and her children. Thus, there was sufficient evidence in the record from which the jury could conclude that Letterman publicly exposed himself under K.S.A. 2020 Supp. 21-5513(a)(2).

2. *The district court did not commit reversible error during sentencing.*

Letterman also challenges his 60-month term of postrelease supervision, which the district court imposed after it found that the conduct giving rise to Letterman's conviction for lewd and lascivious behavior was done for his own sexual gratification. Letterman argues that this determination—which resulted in a supervision term five times longer than the 12-month term that would otherwise apply—constituted judicial fact-finding and thus violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Letterman raises his constitutional challenge for the first time on appeal. Appellate courts generally do not address issues that were not raised before the district court. But we may, in our discretion, consider unpreserved questions if review is possible based on the appellate record and if there are compelling reasons to reach the issue presented. See *State v. Perkins*, 310 Kan. 764, Syl. ¶ 2, 449 P.3d 756 (2019). Letterman asserts that his sentencing question relies on undisputed facts and implicates his fundamental right to a jury trial. Kansas courts have decided to consider *Apprendi* issues under similar

circumstances in the past. See *State v. Gonzalez*, 282 Kan. 73, 114-15, 145 P.3d 18 (2006); *State v. Dean*, 273 Kan. 929, 934-35, 46 P.3d 1130 (2002); *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002); *State v. Martinez*, 50 Kan. App. 2d 1244, 1250-51, 338 P.3d 1236 (2014); *State v. Unrein*, 47 Kan. App. 2d 366, 369, 274 P.3d 691 (2012), *rev. denied* 297 Kan. 1256 (2013); *State v. Baker*, No. 121,727, 2020 WL 4913283, at *2 (Kan. App. 2020) (unpublished opinion), *rev. denied* 312 Kan. 893 (2021). We likewise continue to consider Letterman's arguments here.

In *Apprendi*, the United States Supreme Court held the Sixth and Fourteenth Amendments to the United States Constitution require any fact, other than a prior conviction, that increases a crime's penalty beyond the statutory maximum must be submitted and proved to a jury beyond a reasonable doubt. 530 U.S. at 476-77, 490; see also *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (requiring a jury to find facts triggering an increase in a mandatory minimum sentence). In *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001), the Kansas Supreme Court concluded that these same principles applied to upward departures from presumptive sentences under the Kansas sentencing guidelines. And in *Anthony*, our high court likewise found that the United States Constitution requires that findings that result in the extension of postrelease supervision—like the one we consider here—increase the duration of a person's sentence and are thus subject to the same constitutional limitations. 273 Kan. at 727-28.

Based on the severity level of his crime, Kansas law would ordinarily require Letterman to serve 12 months' postrelease supervision. See K.S.A. 2020 Supp. 22-3717(d)(1)(C). But the district court could extend that postrelease-supervision term up to 60 months if Letterman's offense was sexually motivated. K.S.A. 2020 Supp. 22-3717(d)(1)(D)(i). In this context, conduct is sexually motivated if "one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2020 Supp. 22-3717(d)(6).

10

The district court found that Letterman's actions fell within this definition and thus imposed a 60-month term of postrelease supervision. But Letterman correctly notes that the jury in his case was instructed that lewd and lascivious behavior included conduct done "with the intent to arouse or gratify the sexual desires of the defendant *or another*." (Emphasis added.) In other words, the jury was not asked to determine whether Letterman's actions were done for his own gratification or for the gratification of someone else. Instead, the court had to make that determination when he imposed the extended postrelease-supervision term. This court-made finding encroached on Letterman's constitutional right to a jury trial in violation of *Apprendi*.

This conclusion does not end our analysis, however. In *Washington v. Recuenco*, 548 U.S. 212, 222, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), the Supreme Court of the United States held that an *Apprendi* violation is not a structural error and is therefore subject to a harmless-error analysis. *Recuenco* involved an appeal by a man whose sentence had been extended for three years because he had committed an offense with a firearm. At trial, the jury merely found that his offense had involved a "deadly weapon"; the judge at sentencing found the evidence showed that this deadly weapon was a firearm. The *Recuenco* Court acknowledged that this judicial fact-finding was improper under *Apprendi*. But the Court reversed the Washington Supreme Court's ruling that this violation automatically required the defendant's sentence to be vacated and remanded for a determination as to whether the error was harmless. See *Recuenco*, 548 U.S. at 221-22.

The Kansas Supreme Court analyzed the harmlessness of an *Apprendi* violation in *State v. Reyna*, 290 Kan. 666, 234 P.3d 761 (2010), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). *Reyna* involved a Jessica's Law case where the jury had not been instructed that it must find that the accused was at least 18 years old. Despite this deficiency, the district court imposed an off-grid sentence of life imprisonment. On appeal, the Kansas Supreme Court found that this sentence violated the defendant's Sixth Amendment right under *Apprendi* because it relied on a finding made

by the judge, not the jury. 290 Kan. at 679. But the *Reyna* court explained the facts of that case rendered this violation harmless:

> "Reyna testified he was 37 years of age at the time of the trial. There was no conflicting evidence or, indeed, any other evidence at all concerning his age. Asking whether the record contains evidence that could rationally lead to a contrary finding with respect to the element that the defendant was over the age of 18 at the time of the crime, we conclude that it does not and, . . . for the same reasons, we are convinced that the *Apprendi*-type error that occurred when the trial court made the age determination and imposed sentence . . . was harmless. " 290 Kan. at 682.

The nature of the constitutional defect in this case differs slightly from that discussed in *Reyna*. In that case, the jury had been given no instruction regarding a necessary element of a charged offense, but the evidence nevertheless left no doubt that the element had been satisfied. At Letterman's trial, the jury was instructed on two possible options by which the State could prove lewd and lascivious behavior—conduct done for Letterman's sexual gratification or the gratification of another. Accord *State v. Brown*, 295 Kan. 181, 203, 284 P.3d 977 (2012) (concluding these two objects of sexual gratification were "options within a means that are simply descriptive of the types of factual circumstances that may form the State's proof"). The jury was not asked to identify which option applied here. But only one of those options supports an extension of postrelease supervision under K.S.A. 2020 Supp. 22-3717(d)(1)(D)(i).

This constitutional defect is more akin to the defect the Supreme Court considered in *Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). *Griffin* involved an appeal from a multiple-object conspiracy offense. At trial, the jury was instructed that it should find the defendant guilty of conspiracy if the evidence showed she had participated in either of two objects of the conspiracy: tax fraud and impairing the efforts of government agents to ascertain forfeitable assets. The jury returned a general verdict, finding the defendant guilty of conspiracy. On appeal, the Government

conceded that the evidence presented at trial only supported the defendant's conviction for conspiracy based on the tax-fraud object, not the forfeiture.

When considering this history, the Supreme Court acknowledged that it would have been "preferable" for the trial court to have instructed the jury only on the object of the conspiracy charge that was possible based on the evidence presented. 502 U.S. at 60. But the Court held that the superfluous instruction in that case was harmless—that is, it was not an error that required reversal. 502 U.S. at 59-60. The Court emphasized that the jurors would be "well equipped" to rely on their practical experience and understanding when they were instructed on two options—one supported by the evidence and one entirely devoid of factual support. 502 U.S. at 59-60.

The Kansas Supreme Court has adopted a different analytical framework for evaluating alternative-means instructions than the one the Court used in *Griffin*. See *Brown*, 295 Kan. at 188-200. But as then-Justice Moritz observed in her concurrence in *Brown*, the premise underlying *Griffin* remains compelling in cases that do not involve alternative means of committing a crime: namely, "we can rely upon the jury to do what we instruct them to do—*i.e.*, apply the law to the evidence and arrive at a verdict." 295 Kan. at 218 (Moritz, J., concurring). Thus, when the district court instructs the jury on two possible options for committing a crime and the evidence only supports one of those options, we may presume that the jury rendered a verdict based on the option supported by the evidence. See 295 Kan. at 202 (concluding that the court's instruction as to both options of sexual gratification for lewd and lascivious behavior was harmless even though there was only evidence to show the defendant acted for his own sexual pleasure).

Returning to the facts of the case before us, there is no evidence that Letterman was masturbating to gratify the sexual desires of anyone but himself. To paraphrase the Kansas Supreme Court when it found an *Apprendi* violation harmless in a previous case, the evidence of that fact was "essentially uncontroverted." *State v. Daniels*, 278 Kan. 53,

65, 91 P.3d 1147 (2004). And though the jury was instructed that lewd and lascivious behavior could result from an intent to gratify his or another person's sexual desires, we presume the jury returned a verdict supported by the evidence. In other words, we presume that the jury found that the evidence proved beyond a reasonable doubt that Letterman intended to indulge his own sexual desires. See *Brown*, 295 Kan. at 202.

In the same vein, the district court did not commit reversible error when it concluded that Letterman's offense was sexually motivated, even in the absence of an explicit jury finding to that effect. Based on the evidence presented, the only way the jury could have convicted Letterman of lewd and lascivious behavior was to have found beyond a reasonable doubt that his conduct was sexually motivated within the meaning of K.S.A. 2020 Supp. 22-3717(d)(6). We are confident that the jury convicted Letterman on this basis. And we are likewise convinced that the judge's subsequent finding, though improper under *Apprendi*, was harmless.

Before we conclude, we emphasize—similar to the Court's closing observations in *Griffin*—that our determination that the *Apprendi* violation here was harmless does not sanction judicial fact-findings in sentencing enhancements. Such actions are improper and violate defendants' rights under the Sixth Amendment. In cases that could involve sentencing departures, including extensions of postrelease supervision, the better practice by far—and the only practice consistent with the guarantees of the Sixth Amendment—is to present any relevant factual questions to the jury for its consideration. We merely hold that under the specific facts of this case, the court's failure to follow that procedure does not require reversal of Letterman's 60-month term of postrelease supervision.

Affirmed.